1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR - 3 2010

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

HAROLD MORITZ, et al.,                          )
                                                )
         Plaintiffs,                            )        3:08-cv-519-RCJ-VPC
                                                )
    v.                                          )
                                                )
NICK MARK ANDREWS, et al.,                      )        **ORDER**
                                                )
         Defendants.                            )
_____)

Currently before the Court is a Motion to Dismiss (#16) filed by Defendants City of Winnemucca, Officers Edward Holsclaw, Dan Debord, Dave Garrison, and the Winnemucca Police Department (collectively referred to herein as "Defendants") on October 28, 2008. Plaintiffs Harold Moritz, Susan Ramirez, and Tonnie Savage (collectively referred to herein as "Plaintiffs") filed an Opposition to the Motion to Dismiss and a Motion to Amend Complaint (#37) on December 22, 2008. Defendants filed a Reply in Support of their Motion to Dismiss and an Opposition to Plaintiffs' Motion to Amend (#40) on January 5, 2009, and Plaintiffs filed a Reply (#41) on January 16, 2009.

The Court heard oral argument on the motions on February 12, 2010.

## BACKGROUND

This lawsuit asserts claims for relief under 42 U.S.C. § 1983 and various state torts relating to the shooting death of George Moritz on May 26, 2006, near Winnemucca, Nevada. According to the allegations in the complaint, on May 26, 2006, the Winnemucca Police Department received a call about an alleged drive-by shooting that occurred at a home in Winnemucca. (Notice of Removal (#1) at Exhibit A, p. 5). The call included information

regarding a suspect vehicle which was broadcast to various police officers including Officers Holsclaw, Debord, and Garrison (collectively referred to herein as the "Officers"). Id. After receiving this information, the Officers stopped the suspect vehicle which was occupied by two individuals: Nick Mark Andrews ("Andrews") and Jordan Hutchinson ("Hutchinson").[1]  The complaint alleges that after the Officers stopped the suspect vehicle, the Officers determined that it contained a firearm. Id. In addition, the complaint asserts that the Officers knew that the occupants of the vehicle were "delinquent and dangerous." Id. However, the Officers "did not detain the vehicle, did not detain the occupants of the vehicle, and did not confiscate the firearm contained in the vehicle, but instead allowed the vehicle and its occupants to proceed, creating a danger to members of the public." Id.  Because the firearm was not confiscated, Plaintiffs allege that Andrews and Hutchinson were given "preferential treatment." Id. Plaintiffs claim that the preferential treatment was the result of Andrews being "related to a law enforcement officer by blood or marriage." Id. After Andrews and Hutchinson were briefly detained by the Officers, they allegedly engaged in another shooting which resulted in the death of George Moritz.[2]

On May 23, 2008, Plaintiffs filed a lawsuit against various defendants in the Second Judicial District Court of the State of Nevada. Defendants filed a Petition for Removal on September 25, 2008, based on the constitutional claims. On October 28, 2008, following removal, Defendants filed the current motion to dismiss pursuant to Fed. R. Civ. P. 12(c). (Motion to Dismiss (#16)). According to Defendants, they are entitled to an order dismissing the claims asserted against them because Plaintiffs have failed to state a claim for relief under 42 U.S.C. § 1983. In addition, Defendants argue that they are protected from liability by the public duty doctrine and the doctrine of qualified immunity.

---

[1] Andrews and Hutchinson are also named defendants in this action. Plaintiffs have asserted claims for wrongful death and battery against those individuals.

[2] At oral argument, the parties conceded that George Moritz was shot several hours after the Officers stopped the suspect vehicle at a campsite located in Pershing County.

1     In response, Plaintiffs filed an Opposition to Motion to Dismiss and a Motion to Amend

2     Complaint (#37).[3]  In their opposition, Plaintiffs argue that their complaint states valid claims

3     for relief under both section 1983 and state law.  In addition, Plaintiffs request leave to file a

4     First Amended Complaint "adding certain additional factual allegations which render the

5     validity of the claims for relief even more clear."  (Opposition to Motion to Dismiss (#37) at 9).

6                                              **DISCUSSION**

7     **I.     Motion for Judgment on the Pleadings**

8          Federal Rule of Civil Procedure 12(c) provides for a motion for judgment on the

9     pleadings.  According to that rule, "[a]fter the pleadings are closed - but early enough not to

10    delay trial - a party may move for judgment on the pleadings."  Fed. R. Civ. P 12(c).  "Rule

11    12(c) is a vehicle for summary adjudication, but the standard is like that of a motion to

12    dismiss."  Johnson v. Dodson Pub. Sch., Dist. No. 2-A(C), 463 F.Supp.2d 1151, 1155 (D.Mont.

13    2006).  "[J]udgment on the pleadings is properly granted when, taking all the allegations in the

14    pleading as true, the moving party is entitled to judgment as a matter of law."  Rose v. Chase

15    Bank USA, N.A., 513 F.3d 1032, 1036 (9th Cir. 2008)(quoting Milne ex rel. Coyne v. Stephen

16    Slesinger, Inc., 430 F.3d 1036, 1042 (9th Cir. 2005)).  "As with Rule 12(b)(6) motions, the

17    Court must assume the truthfulness of the material facts alleged in the complaint."  Johnson,

18    463 F.Supp.2d at 1155.  "Moreover, all inferences reasonably drawn from these facts must be

19    construed in favor of the Plaintiffs."  Id.  "A defendant is not entitled to judgment on the

20    pleadings if the complaint raises issues of fact which, if proved, would support recovery."  Id.

21         Defendants argue that the Court should dismiss the claims asserted against them

22    because "Plaintiffs have failed to establish that they are entitled to recover from the City of

23    Winnemucca, the Winnemucca Police Department, or the Defendant Officers on any of the

24    42 U.S.C. §1983 claims."  (Motion to Dismiss (#16) at 5).  Defendants argue that Plaintiffs

25    failed to allege that any action by the state caused a deprivation of Mortiz's constitutional

26    rights.  Id.  According to Defendants, the Due Process Clause does not require a government

27    _____

28         [3] Plaintiffs also filed a Request for Final One Judicial Day Extension of Time to File Opposition
to Motion to Dismiss [Third Request] (#36).  This request was unopposed and is GRANTED.

                                                      3

entity to protect its citizens from acts of private violence; consequently, because Mortiz was
killed by Andrews and Hutchinson in a shooting, Defendants cannot be held liable under
section 1983. In addition, Defendants argue that the "danger creation" exception does not
apply to this case. Defendants note that there is an exception to the rule barring constitutional
liability for acts of private individuals when a state actor affirmatively places a person in a
dangerous situation. However, in this matter, Defendants argue that the exception does not
apply because the Officers did not engage in an affirmative act and did not have any contact
with George Moritz prior to his death.

In response, Plaintiffs argue that they have asserted valid section 1983 claims against
the Defendant Officers, the City of Winnemucca and the Winnemucca Police Department. As
to the Officers, Plaintiffs assert that they have alleged facts which would support a finding of
section 1983 liability under the danger creation doctrine. (Plaintiffs' Opposition to Motion to
Dismiss (#37) at 10). According to Plaintiffs, the Officers stopped the suspect vehicle which
was occupied by Andrews and Hutchinson after the report of a drive-by shooting. Id. at 4.
"Notwithstanding that the stopped vehicle was determined by the Defendant Officers to contain
one or more firearms, Defendant Officers did not detain the vehicle, did not detain the
occupants of the vehicle, and did not confiscate the firearm(s) contained in the vehicle, but
instead allowed the vehicle and its occupants to proceed, creating a danger to members of the
public." Id. Plaintiffs also assert that they have stated a claim for relief against the municipal
Defendants because the complaint alleges that the municipal Defendants "had deliberately
indifferent customs, policies and/or practices" which "were the moving force behind, and the
proximate cause of the injury alleged." Id. at 16.

The Due Process Clause does not impose an affirmative duty upon the state to protect
its citizens against the acts of private third parties. Johnson v. City of Seattle, 474 F.3d 634,
639 (9th Cir. 2007). As a result, a governmental entity's failure to protect an individual from
harm at the hands of a private party generally does not constitute a violation of the Due

4

Process Clause.[4] <u>DeShaney v. Winnebago Co. Dep't of Soc. Servs.</u>, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); <u>Johnson</u>, 474 F.3d at 639. There are two exceptions to the general rule that there is no section 1983 liability for acts of private violence - the "special relationship" exception and the "danger creation" exception. <u>Id.</u>

In this case, Plaintiffs argue that their complaint alleges sufficient facts to state a claim for section 1983 liability under the "danger creation" exception. "To prevail under the danger creation exception, a plaintiff must first show that 'the state action affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." <u>Johnson</u>, 474 F.3d at 639 (quoting <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1061 (9th Cir. 2006)). Under this exception, the Ninth Circuit also requires that the danger to which an individual is exposed must have been "known and obvious" by a defendant, and that a defendant "acted with deliberate indifference" to the danger. <u>Kennedy</u>, 439 F.3d at 1064.

The Ninth Circuit first considered the danger creation exception in <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th Cir. 1989), <u>cert. denied</u> 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). In <u>Wood</u>, the court applied the danger creation exception to a situation where a police officer arrested a drunk driver and impounded the driver's car at 2:30 a.m. The officer drove away and left plaintiff, who had been a passenger in the car, alone in an area with a very high rate of aggravated crime. Plaintiff accepted a ride from a stranger who drove her to a secluded area and raped her. Plaintiff sued the police officer. The Ninth Circuit held that the plaintiff sufficiently alleged that the officer "acted in callous disregard for [her] physical security, a liberty interest protected by the Constitution." <u>Id.</u> at 589.

---

[4] According to the United States Supreme Court, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." <u>DeShaney</u>, 489 U.S. at 195. Rather, "the Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." <u>Id.</u> Consistent with these principles, the Supreme Court has stated that the Due Process Clauses "generally confer no affirmative right to aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. <u>Id.</u> "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follow that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." <u>Id.</u> at 1003-04.

In another case, L.W. v. Grubbs, the Ninth Circuit found that the danger creation exception applied to a prison nurse who was assaulted, kidnapped and raped by a known violent sex offender. 974 F.2d 119 (9th Cir. 1992). According to the court, the nurse had been led to believe that she would not be required to work alone with violent sex offenders. However, she was assigned to work alone with one who had failed all treatment programs and was "considered very likely to commit a violent crime if placed alone with a female." Id. at 120. The Ninth Circuit found that the defendants used their authority as state correctional officers to affirmatively create the dangerous situation by putting the nurse alone with an inmate who had such an extraordinary history of violence against women. Id. at 121.

In Kennedy, another case in which the Ninth Circuit applied the danger creation exception, the plaintiff told a police officer that a neighbor (a 13-year-old boy) had molested her 9-year-old daughter. 439 F.3d at 1057-58. The plaintiff asked the police officer to notify her prior to any police contact with the neighbor's family because the boy had a known history of violence. However, the officer did not notify the plaintiff prior to notifying the boy's family. Rather, the family was notified 15 minutes later. The police officer assured plaintiff that police would patrol the neighborhood that night and that she and her family would be safe. Because plaintiff thought police would be patrolling, she and her family remained in their home that night. During the night, the neighbor boy broke into plaintiff's home, shot and killed her husband, and shot her. The Ninth Circuit held that because the defendant officer knew of the neighbor's violent tendencies, failed to notify plaintiff before he contacted the neighbor, and then misrepresented to the plaintiff the risk they faced if they remained at home, the officer "affirmatively created an actual particularized danger [plaintiff] would not otherwise have faced." Id. at 1063.

///
///
///
///
///

1    In contrast, the Ninth Circuit in <u>Johnson</u>, held that the danger creation exception did not
2    apply to several plaintiffs who were injured when a riot broke out during a Mardi Gras
3    celebration in downtown Seattle. 474 F.3d at 636. The police chief ordered police to remain
4    on the crowd's periphery because he believed inserting officers into the hostile crowd would
5    incite greater violence. The plaintiffs were assaulted in the crowd while police remained on
6    the periphery. The Ninth Circuit found that the plaintiffs failed to offer any evidence that the
7    defendants engaged in affirmative conduct that enhanced the danger the plaintiffs exposed
8    themselves to by participating in the Mardi Gras celebration. "The decision to switch from a
9    more aggressive operation plan to a more passive one was not affirmative conduct" that
10   placed plaintiffs in danger, "because it did not place them in any worse position than they
11   would have been in had the police not come up with any operational plan whatsoever." <u>Id.</u> at
12   641.

13   Finally, in <u>Martinez v. State of California</u>, the United States Supreme Court held that
14   there was no state liability under the due process clause for the murder of a girl by a parolee
15   who had been released on parole some five months before he committed such killing. 444
16   U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). According to the Court, although the decision
17   to release the parolee from prison "was action by the State," the action of the parolee "five
18   months later cannot be fairly characterized as state action." <u>Id.</u> at 284-85. The Court stated
19   that the parolee was not an agent of the parol board and that the "parole board was not aware"
20   that the murdered girl "as distinguished from the public at large, faced any special danger."
21   <u>Id.</u> at 285. As such, the Court held that "at least under the particular circumstances of this
22   parole decision, appellants' decedent's death is too remote a consequence of the parole
23   officers' action to hold them responsible under federal civil rights law."[5] <u>Id.</u>

24
25
26

27   ───────────────
       [5] The Court stated that "[w]e need not and do not decide that a parole officer could never by
28   deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on
       parole." <u>Id.</u>

7

1    In this case, Plaintiffs concede that Moritz was killed in a shooting and that the

2 individuals involved were not state actors. However, Plaintiffs argue that the "danger creation"

3 exception applies because the Officers pulled over the suspect vehicle and failed to arrest the

4 suspects prior to the shooting. Plaintiffs also allege that the Officers were aware that there

5 was a firearm in the suspect vehicle, but that the Officers failed to confiscate the firearm. As

6 a result, the Officers created a danger to members of the public. Moreover, Plaintiffs allege

7 that it was foreseeable that after the Officers failed to detain the suspects or confiscate their

8 firearm that the subject vehicle would proceed in another shooting and kill George Moritz.

9 However, even assuming the truth of these allegations, they are not sufficient to state a claim

10 under the danger creation exception.[6]

11    As noted in the foregoing, the danger creation exception requires that a plaintiff

12 establish that state actors affirmatively placed an individual in danger, by acting with deliberate

13 indifference to a known and/or obvious danger.  "In examining whether an officer affirmatively

14 places an individual in danger . . . we examine whether the officer left the person in a situation

15 that was more dangerous than the one in which they found him."  Kennedy, 439 F.3d at 1062.

16 "Thus, we ask first whether, as alleged, any affirmative actions" by the officer placed the

17 individual in danger that the individual "otherwise would not have faced."[7]  Id. at 1062-63.

18 _____

19    [6] Plaintiffs rely on the standard enunciated by the Seventh Circuit Court of Appeals in Reed v.
Gardner, 986 F.2d 1122 (7th Cir. 1993) to argue that the Officers in this case did not need to know about

20 the likely harm to Moritz as an individual.  In that case, the Seventh Circuit stated that when the "police
create a specific danger, they need not know who in particular will be hurt.  Some dangers are so evident,

21 while their victims are so random, that state actors can be held accountable by any injured party."  Id.
at 1127.  That case involved the failure by police officers to arrest an alleged drunk driver who later

22 injured motorists in an automobile collision.  However, in Johnson, the Ninth Circuit specifically stated
that the danger creation exception requires that the state action "affirmatively place the plaintiff in a

23 position of danger."  474 F.3d at 639 (emphasis added).  In other words, the state action creates or
exposes "an individual" to a danger which he or she would not have otherwise faced.  Id.

24    [7] In applying this standard, at least one court has held that "two defining principles" emerge from

25 the Ninth Circuit precedent on the danger creation exception.  Jamison v. Storm, 426 F.Supp.2d 1144,
1155 (W.D.Wash. 2006).  These are: (1) "identifiable conduct by the state actor that rises to more than

26 a mere failure to act; and (2) some contact or connection with the injured parties that creates a causal
connection between the state actor's conduct and the increased danger."  Id.  Here, Plaintiffs have failed

27 to assert any "contact or connection" with George Moritz that creates a causal connection between the
Officer's conduct and the increased danger to Moritz.  In addition, the Complaint appears to allege a

28 mere failure to act by the Officers - i.e. the failure to arrest or confiscate the firearm - rather than
affirmative conduct.

1    Here, Plaintiffs' Complaint fails to state a claim for relief under the danger creation
2  doctrine. Plaintiffs have failed to establish an affirmative act that placed Moritz in danger by
3  the Officers. In this regard, Plaintiffs assert that the affirmative act was the Officers' failure to
4  arrest the individuals after stopping their vehicle and the Officers' failure to confiscate the
5  firearm. However, such allegations do not establish that the Officers put Moritz in a position
6  of danger "which he would not have otherwise faced" as required under United States
7  Supreme Court authority. See DeShaney, 489 U.S. at 197, 109 S.Ct. at 1004. Defendants
8  had no interaction or involvement with Moritz prior to the shooting. Although they stopped the
9  individuals who allegedly shot him, the allegations of the complaint fail to assert how the
10 Officers left Moritz in a situation that was more dangerous. See Johnson, 474 F.3d at 641
11 (stating that there is no due process liability when police conduct places the plaintiff "in no
12 worse position than that which" the plaintiff would have been in had the officers "not acted at
13 all"). In this matter, the Court recognizes that what happened on the night of May 26, 2006,
14 was a tragic occurrence. However, Plaintiffs have failed to show that such an occurrence was
15 also a constitutional violation by the Defendants.

16   As such, Defendants are entitled to an order dismissing the section 1983 claims
17 asserted against them because they cannot satisfy the initial requirement of the danger
18 creation exception.    Without the danger creation exception, the Supreme Court's
19 pronouncements in DeShaney are controlling and the Defendants' alleged failure to protect
20 George Moritz from the conduct of Andrews and Hutchinson does not constitute a violation of
21 the Due Process Clause. See 489 U.S. at 197, 109 S.Ct. at 1004. Moreover, because
22 Plaintiffs have failed to show that the Officers violated Moritz's constitutional rights, the claims
23 are also dismissed against the municipal defendants.    "Like individual state officials,
24 municipalities are only liable under Section 1983 if there is, at a minimum, an underlying
25 constitutional tort." Johnson, 474 F.3d at 638. Based on Plaintiffs' failure to sufficiently state
26 a claim for a constitutional violation, the municipal defendants are not liable under section
27 1983 and are entitled to judgment on the pleadings.

28   In addition, even if the danger creation exception did apply, the violation of that

9

exception was not so obvious that the Officers should have known at the time that they were

violating Moritz's constitutional rights. Consequently, even assuming a constitutional violation,

the Officers are entitled to qualified immunity.[8]

As such, based on the foregoing, Defendants' motion to dismiss is granted. Plaintiffs

have failed to satisfy the requirements necessary to assert a violation of the Due Process

Clause against the Defendants.

## II. Motion to Amend

Following the filing of Defendants' motion to dismiss, Plaintiffs sought leave to amend

their complaint to include additional facts and allegations. A party may amend its complaint

with the court's leave, and leave shall be freely given where "justice so requires." Fed. R. Civ.

P. 15. In applying this rule, the Ninth Circuit states that "Rule 15's policy of favoring

amendments to pleadings should be applied with 'extreme liberality.'" DCD Programs, Ltd. v.

Leighton, 833 F.2d 183, 186 (9th Cir. 1987). However, a district court may deny leave to

amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [and by] futility of [the] amendment."

Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1034 (9th Cir. 2008)(internal

quotations and citations omitted).

In their opposition to Defendants' motion to dismiss, Plaintiffs assert that their original

complaint states valid claims for relief under 42 U.S.C. § 1983, but request leave to file a First

Amended Complaint in order to add "certain additional factual allegations which render the

validity of the claims for relief even more clear." (Motion to Amend Complaint (#37) at 9).

---

[8] The qualified immunity test is a two-prong analysis in which a court must first determine whether the officer's conduct violated a constitutional right. If the court determines that the conduct did violate a constitutional right, the second prong requires the court to determine whether, at the time of the violation, the constitutional right was "clearly established." Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A right is clearly established if its 'contours' are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. In Pearson v. Callahan, the United States Supreme Court held that this two-part test is still appropriate but that a court may exercise its discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand. 129 S.Ct. 808 (2009).

Specifically, in additional to the claims asserted in the initial complaint, Plaintiffs' amended complaint alleges that the Officers "knew or had reason to know that the occupants of the stopped vehicle were responsible for the drive-by shooting that had occurred shortly before," and that after stopping the vehicle, the Officers knew that "the occupants were in possession of a firearm concealed under the seat of the vehicle." Id. at Exhibit 1, p.26.  Plaintiffs also allege that the Officers "had a duty to confiscate the concealed weapon" and a "duty to arrest the occupants of the vehicle." Id.  Plaintiffs state that the Officers "by their affirmative acts in placing the firearm in the hands of the occupants of the vehicle who had just committed a drive-by shooting, and in releasing the occupants of the vehicle to proceed unrestrained," placed an "imprimatur of governmental approval on, and emboldened and encouraged, the vehicle occupants' use of a firearm in an illegal manner, thereby creating" a danger to individuals including Moritz. Id. at Exhibit 1, p. 27.  Finally, Plaintiffs assert that the danger to Moritz was obvious and known by the Officers and that they acted in conscious disregard of that risk. Id.

In response, Defendants argue that "Plaintiffs' attempt to amend their complaint is futile." (Defendants Reply in Support of Motion to Dismiss and Opposition to the Motion to Amend (#40) at 3).  According to Defendants, "[r]egardless of the addition of Plaintiffs' baseless accusations," Plaintiffs' complaint and proposed amended complaint allege the same basic factual situation: that the Officers stopped a vehicle suspected to be involved in a drive-by shooting and failed to arrest the occupants or to confiscate a gun that the Officers found in the vehicle. Id. As such, according to Defendants, Plaintiffs' amendments to the complaint do "not change the fact that it still fails to plead factual allegations upon which §1983 liability can rest." Id. at 4.

In this matter, although Rule 15 favors amendments to a complaint and requires that the rule be applied with extreme liberality, Plaintiffs' motion is denied on the basis that such amendment would be futile. Although Plaintiffs' First Amended Complaint adds additional allegations relating to the Officers' duty to detain the individuals in the suspect vehicle, the amendment does not include any additional allegations regarding how the Officers' conduct

left Moritz in a more dangerous situation than he would have been in had the Officers not stopped the vehicle. Again, Plaintiffs have not alleged that Moritz was placed in a worse or more vulnerable position had the Officers not acted at all. Because the amended complaint does not allege that the Officers affirmatively created an actual particular danger that Moritz would not have otherwise faced, the amendment is futile and is denied.

## III. Remaining State Law Claims

Following the dismissal of the federal claims against the Defendants, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. These claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss (#16) is GRANTED.

It is further ORDERED that Plaintiffs' Motion to Amend (#37) is DENIED. The clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED: This 3rd day of March, 2010.

United States District Judge

12